UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BART DEWALD,

    Plaintiff,

v.                               CAUSE NO. 3:18-CV-182-RLM-MGG

LACEY R. GORSKE, et al.,

    Defendants.

## OPINION AND ORDER

Bart Dewald, a prisoner without a lawyer, proceeds on six claims against nine defendants as follows:

- An Eighth Amendment claim against Debra Rose, Lacey R. Gorske, Susan Webster, and Christine Tripp for acting with deliberate indifference to serious medical needs by denying him adequate pain medication and refusing to see him for his neck issues since January 1, 2017;

- An Eighth Amendment claim against Sherry Fritter and Becky Hess for money damages for acting with deliberate indifference to serious medical needs by refusing to respond to his complaints about the lack of medical care for his neck issues since January 1, 2017;

- An Eighth Amendment claim against Wexford Health Sources, Inc., for the practice of medical staff refusing to provide

medication as prescribed and ignoring requests for medical attention;

- An Eighth Amendment claim against Nancy Marthakis for acting with deliberate indifference to serious medical needs by discontinuing his prescription for Neurontin;
- A First Amendment claim against Nancy Marthakis for money damages for discontinuing his prescription for Neurontin in retaliation for filing this lawsuit; and
- A claim for injunctive relief against the Warden of the Indiana State Prison in his official capacity to obtain adequate medical treatment for his neck issues as required by the Eighth Amendment.

The defendants filed motions for summary judgment on all claims, arguing that they acted in accordance with their medical judgment.

FACTS

Mr. Dewald resides at the Indiana State Prison and suffers from chronic neck and back pain. His medical records include X-rays revealing a moderate degenerative disc disease in the lumbar spine and mild degenerative disease in the cervical spine. In March 2013, a neurologist reviewed electromyography and MRI results and found nerve damage in the arms but no evidence of nerve damage in the neck, herniated discs, or spinal stenosis. In September 2016, a neurosurgeon found that Mr. Dewald wasn't a candidate for surgery but

2

recommended physical therapy, which Mr. Dewald received. His medical records also included evidence of drug-seeking behavior, including various observations from mental health staff in 2010 and a positive test for unprescribed amphetamines in 2011. On January 7, 2018, Mr. Dewald told medical staff that he had smoked what he believed to be "weed." He has also failed many drug screens during his time in prison due to consuming illegal substances.

Mr. Dewald was under Dr. Thompson's care until at least October 2017. Mr. Dewald had regular appointments with Dr. Thompson for his neck and back pain. On August 11, 2017, Mr. Dewald complained of unbearable pain. Nurse Gorske spoke with Dr. Thompson by telephone and administered a Toradol injection at his direction.

## Medication Administration

According to Mr. Dewald, on October 1, 2017, and on October 10, 2017, he complained of pain, but correctional staff told him that Nurse Rose refused to call him to the medical unit or treat his pain. On October 8, 2017, he sent Administrator Fritter a letter regarding his neck condition, but she didn't respond.[1] ECF 100-1 at 10. He also sent Regional Manager Hess, who doesn't work at the Indiana State Prison, two letters telling her that he was going to file a lawsuit about his neck condition and demanding Nurse Rose's termination,

---

[1] In the amended complaint, Mr. Dewald also alleges that Administrator Fritter refused to respond to eight requests for medical care, but provides no information regarding the requests' contents or timing. ECF 100-1 at 11.

3

and she directed him to use the grievance process.[2] On March 17, 2018, he gave a medical request about neck pain to a staff member to give to Nurse Gorske, and a correctional officer told him that she had left the correctional facility for the day. Later that day, Mr. Dewald asked a correctional officer to tell the nurse on duty that he needed immediate attention for neck pain and that he would sue the nurse if he wasn't taken to the medical unit. Nurse Webster gave him Tylenol but refused to otherwise assist him in an unprofessional manner.[3] Id. On March 28, 2018, Mr. Dewald informed Nurse Tripp that his dose of Neurontin was missing. She told him that she forgot it but would return with it later. Later that morning, a correctional officer told Mr. Dewald that Nurse Tripp told him that Mr. Dewald had already received his dose of Neurontin. That afternoon, Nurse Tripp told Mr. Dewald that he had already received his dose for the morning. When he responded that he hadn't, she told him that it was too late for him to receive it.

Nurse Rose attests that she doesn't recall Mr. Dewald's requests for medical care on October 1, 2017, and on October 10, 2017, and that they don't appear in the medical records. Administrator Fritter attested that she doesn't

---

[2] Mr. Dewald dated this letter June 6, 2017, but it discusses events that occurred in October 2017. This leads the court to question the letter's authenticity, but the court assumes for purposes of this order that Regional Manager Hess received it.

[3] The court can't credit Mr. Dewald's aspersions of nefarious intent onto Nurse Webster or Nurse Tripp for purposes of summary judgment. See Fed. R. Civ. P. 56(c)(4). For instance, he suggests that Nurse Webster offered Tylenol hoping that she could use his refusal of medical care against him and that she tried to provoke him by refusing to contact a physician or give him her name. ECF 100-1 at 23-24. He also suggests that Nurse Tripp fabricated reasons to not give him his morning dose so that she could steal it. Id. at 13-15. These allegations regarding subjective intent are speculative and without evidentiary support in the record.

remember getting a letter from Mr. Dewald on October 8, 2017. In her role as administrator, she couldn't override the treatment decisions of physicians and didn't personally treat inmates. Instead, her role was to ensure that inmates had access to necessary medical care. Mr. Dewald had a scheduled appointment with a nurse on October 11 but could not attend due to a lockdown.

Nurse Gorske attests that she doesn't recall Mr. Dewald's request for medical care on March 17, 2018, and that it doesn't appear in the medical records. Nurse Webster attested that, March 17, 2018, she examined Mr. Dewald at the nursing station and saw him walk independently with a strong and steady gait. There were no signs of distress except for Mr. Dewald crying, which she questioned due to the absence of any tears. She further observed him remove his coat and move during the discussion and found that he could move his neck without difficulty or a limited range of motion. She noted that he already had active prescriptions for pain medication, including Neurontin and tramadol. As a result, she decided to address his complaints of pain by giving him Tylenol and four bags of ice.

Nurse Tripp attested that she doesn't remember interacting with Mr. Dewald on March 28, 2018. The medical records indicate that she didn't administer medication to Mr. Dewald that morning and that he received his morning dose on Neurontin but not his evening dose.[4]

---

[4] Given Mr. Dewald's certainty regarding the events on this day, it seems likely that a non-party nurse made a clerical error when administering medication to inmates that evening by filling out the first available spot for the medication and the date on the form. In any event, the court will credit Mr. Dewald's personal observations on this issue for purposes of summary judgment.

5

Prescriptions

According to Mr. Dewald, on March 12, 2019, Dr. Marthakis acknowledged his neck condition and agreed to renew his prescriptions. He told Dr. Marthakis that he panics and has suicidal thoughts when he doesn't get Neurontin and didn't understand why Wexford exposed itself to civil liability to save money. She discontinued his Neurontin prescription, stating, "You should have thought about that beforehand," which he understood to be a reference to this lawsuit.[5]

In early 2018, Mr. Dewald's prescriptions included Neurontin and tramadol. On July 10, 2018, Dr. Marthakis saw Mr. Dewald for the first time at a chronic care appointment. She noted his history of neck pain but also the earlier radiographic images of his spine and his history of drug addiction and drug-seeking behavior. Based on this information, she believed that Neurontin, which has addictive properties and is used to treat nerve pain, and tramadol, which also has addictive properties, were inappropriate for Mr. Dewald for chronic pain relief. She decided to decrease his prescription for Neurontin and to replace it with a less addictive alternative. She prescribed Mobic, which is used to treat patients with arthritis and degenerative disc disease, and Tylenol for pain relief as needed. Mr. Dewald also requested Flexeril, a muscle relaxer, but Dr. Marthakis denied the request, reasoning that Mr. Dewald didn't have

---

[5] In the amended complaint, Mr. Dewald suggests that Dr. Marthakis made this statement in July 2018, and also represents that she made an identical statement on March 2019. ECF 100-1 at 47, 50-51. After reviewing the record in its entirety and reexamining the amended complaint, it appears that the July 2018 reference was a mistake and that his claims against Dr. Marthakis focus on the March 2019 appointment. Succinctly, the record contains no indication that Dr. Marthakis was aware of this lawsuit in July 2018, and Mr. Dewald amended his complaint to add her as a defendant only two weeks after the March 2019 appointment. ECF 97.

muscle spasms and that Mobic was more appropriate, given Mr. Dewald's degenerative disc disease.

On September 17, 2018, a nurse practitioner increased Mr. Dewald's prescription for Neurontin to previous levels due to his complaints of neck pain. Mr. Dewald had three physical therapy sessions in November 2018. At the final session, the therapist noted that Mr. Dewald had substantial relief with respect to his neck condition due to therapy and provided him with a home exercising plan.

On March 12, 2019, Mr. Dewald complained of a lack of improvement and a limited range of motion with respect to his neck. Considering the lack of improvement on Neurontin and his history of drug-seeking behavior, Dr. Marthakis decided to wean him from Neurontin and to try Trileptal, which is used to treat chronic nerve pain, as a replacement. She also continued his prescriptions for Tylenol, Mobic, and aspirin.

On May 31, 2019, Mr. Dewald reported that Trileptal didn't help him and that only Neurontin relieved his pain. Dr. Marthakis asked him about the home exercise plan, but Mr. Dewald said the physical therapist didn't show him any exercises. Considering his history of drug-seeking behavior, Dr. Marthakis declined to restart Neurontin but instead increased his prescriptions for Trileptal and Mobic.

## STANDARD OF REVIEW

7

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010). "However, our favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." Fitzgerald v. Santoro, 707 F.3d 725, 730 (7th Cir. 2013) (citing Harper v. C.R. Eng., Inc., 687 F.3d 297, 306 (7th Cir. 2012)).

## ANALYSIS

Mr. Dewald asserts Eighth Amendment claims of deliberate indifference to serious medical needs against the defendants. Under the Eighth Amendment, inmates are entitled to adequate medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. Farmer v. Brennan, 511 U.S.

8

825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and if untreated could result in further significant injury or unnecessary pain, and that significantly affects the person's daily activities or features chronic and substantial pain. Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005).

Deliberate indifference is a high standard, and is "something approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. Duane v. Lane, 959 F.2d 673, 677 (7th Cir. 1992). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." Board v. Farnham, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Jackson v. Kotter, 541 F.3d 688, 697 (7th Cir. 2008).

> Medical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

9

Id. at 697-698. Negligence, incompetence, or even medical malpractice don't amount to deliberate indifference. Pierson v. Hartley, 391 F.3d 898, 902 (7th Cir. 2004); Walker v. Peters, 233 F.3d 494, 499 (7th Cir. 2000).

A prisoner isn't entitled to demand specific care, nor is he entitled to the "best care possible." Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997). When the defendants have provided some level of care for a prisoner's medical condition, a prisoner trying to establish deliberate indifference must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." Hayes v. Synder, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. Ciarpaglini v. Saini, 352 F.3d 328, 331 (7th Cir. 2003).

Mr. Dewald says Nurse Rose, Nurse Gorske, Nurse Webster, and Nurse Tripp acted with deliberate indifference to serious medical needs by denying him adequate pain medication and refusing to see him for his neck issues. As an initial matter, Mr. Dewald's claims against Nurse Rose and Nurse Gorske rely solely on his statements that correctional staff told him that these nurses refused to call him to the medical unit or treat his pain. These statements are inadmissible hearsay under Fed. R. Evid. 802, and the record contains no other evidence that Nurse Rose or Nurse Gorske were aware of his neck pain. Because the record contains no admissible evidence to suggest that Nurse Rose or Nurse

10

Gorkse acted with deliberate indifference to his neck pain, the court grants summary judgment with respect to these defendants.

Mr. Dewald's allegations against Nurse Webster amount to no more than his dissatisfaction with her demeanor and the treatment she provided in response to his complaints of pain. He doesn't dispute that she examined him at the nursing station and observed him remove his coat without difficult and move freely as he talked with her. He doesn't dispute that physicians had already prescribed him pain medication and that she provided him with Tylenol and ice bags. Similarly, Mr. Dewald's description of Nurse Tripp's actions indicate that she forgot his medication during morning pass, mistakenly believed that she had given him his morning dose later that day, and ultimately decided not to provide it after considering the prescribed timing of his Neurontin dosages and the time of the day. Though Mr. Dewald may believe that Nurse Tripp lied to him to steal his medication rather than making a mistake or exercising medical judgment, he has submitted no evidence to support such a motive. Mr. Dewald can't proceed against Nurse Webster or Nurse Tripp.

Mr. Dewald asserts an Eighth Amendment claim against Administrator Fritter and Regional Manager Hess for acting with deliberate indifference to serious medical needs by refusing to respond to his complaints about the lack of medical care for his neck issues. Mr. Dewald alleges that, October 8, 2017, he personally delivered a letter to Administrator Fritter about the health care for his chronic neck condition but that she never responded. Mr. Dewald doesn't describe the contents of the letter with greater specificity, so it is unclear what

Mr. Dewald expected her to do or how she acted with deliberate indifference to his medical needs. Further, Administrator Fritter's role was limited to ensuring that inmates had access to necessary medical care. The medical records reflect that he was scheduled for an appointment with a nurse on October 11, 2017. Consequently, even if Administrator Fritter ignored Mr. Dewald's requests for medical care, it is unclear how he was harmed.

The record indicates that Mr. Dewald provided a copy of the letter sent to Regional Manager Hess in which he notified her of his intent to sue Wexford and Nurse Rose and demanded Nurse Rose's termination. She directed him to the grievance process in response. It is unclear why Mr. Dewald believes that this response constitutes deliberate indifference. The letter conveys his dissatisfaction with a particular staff member on two isolated occasions rather than dissatisfaction with his overall medical treatment and includes no requests for medical care. Given the letter's contents and tone, no reasonable jury could find that Regional Manager Hess acted with deliberate indifference to serious medical needs.

Mr. Dewald asserts that Dr. Marthakis acted with deliberate indifference to his serious medical needs and retaliated against him for filing this lawsuit by discontinuing his prescription for Neurontin., giving rise to a First Amendment retaliation claim "To prevail on his First Amendment retaliation claim, [a plaintiff] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in

12

the Defendants' decision to take the retaliatory action." Gomez v. Randle, 680 F.3d 859, 866 (7th Cir. 2012).

The evidence of a retaliatory motive consists solely of Mr. Dewald's representation that, on March 12, 2019, Dr. Marthakis discontinued his Neurontin prescription, stating, "You should have thought about that beforehand," which he understood to be a reference to this lawsuit. Mr. Dewald does not explain why he believes that this statement was a reference to this lawsuit. The record contains no evidence that Mr. Dewald and Dr. Marthakis discussed this lawsuit during the chronic care appointment, and, given the absence of meaningful context, her statement could have been referring to any number of topics, including his drug-seeking behavior or his participation in martial arts that caused the neck injury.

Further, Dr. Marthakis first planned to wean Mr. Dewald from Neurontin in July 2018 but also planned to replace it with other pain medications. Dr. Marthakis prepared an affidavit regarding Mr. Dewald's medical care in August 2018, but there is no indication that she was aware of this case before that. Six months later, in March 2019, Dr. Marthakis again decided to wean Mr. Dewald from Neurontin and to replace it with other pain medications. Given this timeline, Mr. Dewald essentially suggests that Dr. Marthakis waited six months to retaliate against Mr. Dewald for filing this lawsuit by continuing to implement a treatment plan that she had developed and had started to implement before she was aware of this lawsuit. On this record, no reasonable jury could conclude that Dr. Marthakis retaliated against Mr. Dewald in this manner. The sequence

of events does not suggest a retaliatory motive, nor is it clear that weaning an inmate from one pain medication to replace it with another medication used to treat the same type of pain would deter an inmate of ordinary firmness from First Amendment activity. Therefore, the court grants the motion for summary judgment with respect to the First Amendment claim against Dr. Marthakis.

Additionally, the undisputed record indicates that Dr. Marthakis prescribed pain medication in accordance with her medical judgment. In March 2019, Dr. Marthakis decided to wean Mr. Dewald from Neurontin and replace it with Trileptal because it was addictive and because he had a history of drug-seeking behavior. Though Mr. Dewald believes that Dr. Marthakis shouldn't have considered these factors, he can't reasonably maintain that they are outside the realm of reasonable medical judgment. Further, Dr. Marthakis didn't discount Mr. Dewald's reports regarding his reliance on Neurontin and neck pain. To the contrary, she considered his lack of improvement of Neurontin, tapered his dose, and replaced it with another medication that also alleviated nerve pain. In May 2019, when he reported that he continued to feel pain, she didn't ignore this report but increased the dosages of his pain prescription. Because the record reflects that Dr. Marthakis didn't act with deliberate indifference but instead exercised her medical judgment, the court grants the motion for summary judgment with respect to the Eighth Amendment claim against her.

Mr. Dewald asserts an Eighth Amendment claim against Wexford Health Sources, Inc., for the practice of medical staff refusing to provide medication as prescribed and ignoring requests for medical attention. For Section 1983 claims,

corporate liability exists only "when execution of a [corporation's] policy or custom . . . inflicts the injury." Calhoun v. Ramsey, 408 F.3d 375, 379 (7th Cir. 2005). A corporation can be held liable for "an express policy that, when enforced, causes a constitutional deprivation." Id. Absent an unconstitutional policy, corporate liability may be established with a showing of "a widespread practice that, although not authorized by written law or express [corporate] policy, is so permanent and well settled as to constitute a custom or usage with the force of law." McTigue v. City of Chicago, 60 F.3d 381, 382 (7th Cir. 1995). The policy or custom must be the "moving force behind the deprivation of his constitutional rights." Johnson v. Cook Cty., 526 F. App'x 692, 695 (7th Cir. 2013). As already explained, the record contains no evidence that the defendants refused to provide medication as prescribed or ignored Mr. Dewald's requests for medical attention. Therefore, the motion for summary judgment is granted with respect to this defendant.

Mr. Dewald asserts an injunctive relief claim against the Warden of the Indiana State Prison in his official capacity to obtain adequate medical treatment for his neck condition as required by the Eighth Amendment. The record reflects that Mr. Dewald has received diagnostics tests, pain medication, and physical therapy sessions to address his neck condition. In the amended complaint, he also asked for surgery but has since conceded that no physician has recommended it and withdrawn his request for surgery. In sum, the record indicates that Mr. Dewald has received adequate medical treatment for his neck

condition. The motion for summary judgment is granted with respect to this claim, and no other claims remain.

As final matter, in his response brief, Mr. Dewald alleges that he suffered from a constipation and ear pain and was unable to obtain his medication at the Elkhart County Jail; that Dr. Marthakis told him to purchase stool softeners and Rolaids from the commissary and discontinued his low floor pass; that he went seven days without his heart medication; and that his recent hernia surgery traumatized him. Because these allegations are unrelated to the claims in this case, the court will not further address them here.

For these reasons, the court:

(1) GRANTS the motions for summary judgment (ECF 119, ECF 122); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and to close this case.

SO ORDERED on August 18, 2020

s/ Robert L. Miller, Jr.  
JUDGE  
UNITED STATES DISTRICT COURT